*Court of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*





★ ★ ★ ★ ★ ★

# OPINION

No. 04-10-00016-CV

**DRURY SOUTHWEST, INC.**,
Appellant

v.

**LOUIE LEDEAUX #1, INC.**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-03926
Honorable Janet P. Littlejohn, Judge Presiding

Opinion by: Rebecca Simmons, Justice

Sitting: Karen Angelini, Justice
Phylis J. Speedlin, Justice
Rebecca Simmons, Justice

Delivered and Filed: July 6, 2011

REVERSED & REMANDED

The Appellee's motion for rehearing is granted in part and denied in part. We withdraw our opinion and judgment of April 13, 2011, and substitute this opinion and judgment.

Drury Southwest, Inc. appeals the trial court's judgment awarding Louie Ledeaux #1, Inc. over one million dollars in damages under the Texas Deceptive Trade Practices Act (DTPA). Drury raises several issues: (1) the trial court erred in submitting the damages in broad form; (2) the jury awarded excessive damages; (3) Ledeaux failed to plead special damages; (4) the trial

court's instruction informed the jurors of the effect of their answers; (5) the trial court erred in instructing the jury on Ledeaux's DTPA claim and failing to grant its motion for judgment notwithstanding the verdict (JNOV) because there is legally insufficient evidence to support its liability under the DTPA; (6) the trial court erred in refusing to admit impeachment evidence; (7) Drury is entitled to $32,833.33 as an offset to the damages awarded to Ledeaux; and (8) the attorney's fees award should be remitted to conform with the evidence. We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

Drury owns property that hosts several hotels and restaurants. Drury approached Ledeaux to operate a Mexican restaurant in a vacant restaurant space on the property. To entice Ledeaux, Drury promised to build an outdoor seating patio and to allow Ledeaux to install a "reader board" sign. Drury and Ledeaux signed the lease on August 7, 2007, and the restaurant opened on December 7, 2007.

Several problems arose regarding the parties' agreement. Drury had waited six months to apply for a permit to build the patio. The construction of the patio was further delayed because part of the property on which Drury promised to build the patio was actually owned by a different entity. Additionally, the signage in question was never installed. Ledeaux also discovered that the nearest exit off of the highway adjacent to the property was not going to be reopened after the city finished its construction project.

After several months of failing to generate money, Ledeaux met with Drury on March 5, 2008, and discussed the possibility of changing the restaurant format. Five days later, Drury changed the locks on the premises and offered Ledeaux $1.00 for the restaurant. By that point, Ledeaux had invested hundreds of thousands of dollars in setting up and operating the business.

That same day, Drury filed for a temporary restraining order to prevent Ledeaux from removing property from the premises. Ledeaux counterclaimed for breach of contract, fraud, negligent representation, and violations of the Property Code and the DTPA. After a trial, the jury found that Ledeaux did not breach the lease, but did default on a promissory note to Drury, and that Drury (1) breached the lease; (2) committed fraud; (3) negligently misrepresented the terms of the lease; (4) violated the DTPA; and (5) violated the Texas Property Code.

The trial court awarded Ledeaux damages under the DTPA, including $625,000 in actual damages and $450,000 for Drury's knowing conduct. After remittitur, the trial court rendered its final judgment in the amount of $1,139,000, and awarded Ledeaux $23,608.56 in attorney's fees. Drury's Motion for Judgment NOV and Motion for New Trial were overruled by operation of law, and this appeal followed.

### DTPA LIABILITY

Drury argues that the evidence is legally insufficient to support the jury's finding of Drury's liability under the DTPA and the trial court's submission of a jury question on this issue.[1] Specifically, Drury argues that the evidence of its misrepresentations about the patio and reader board sign and its failure to disclose that the highway exit was not going to reopen after construction was completed was legally insufficient to support any of the five disjunctive bases of liability contained in the jury charge, including misrepresentation of legal rights, failure to disclose, false advertising, and misrepresentation of the uses, benefits, or quality of the leased premises.[2]

---

[1] Although Ledeaux argues that Drury waived all of its issues by failing to include a standard of review, this failure does not constitute waiver. *See* TEX. R. APP. P. 38.1; *Republic Underwriters Ins. Co. v. Mex-Tex, Inc.*, 150 S.W.3d 423, 427 (Tex. 2004). The cases cited by Ledeaux on this issue are distinguishable because the appellants in those cases did not make an argument regarding sufficiency, not because the appellants' briefs lacked the appropriate standard of review.

[2] Although Drury argues that the trial court erred in submitting the question to the jury and in failing to grant its motion for JNOV, its argument as to both issues is the same: that the evidence was legally insufficient to support the

## A. Standard of Review

When reviewing a legal sufficiency challenge, we review the evidence in a light most favorable to the trial court's judgment and indulge every reasonable inference to support the judgment. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). Evidence is legally sufficient if it would enable a reasonable fact finder "to reach the verdict under review." *Id.* at 827. We will, therefore, sustain a legal sufficiency challenge if: (1) there is "a complete absence of a vital fact"; (2) "the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact"; (3) "the evidence offered to prove a vital fact is no more than a mere scintilla"; or (4) "the evidence establishes conclusively the opposite of the vital fact. *Id.* at 810 (citation omitted). More than a scintilla of evidence exists if the evidence allows for reasonable minds to reach differing conclusions about a vital fact's existence. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782–83 (Tex. 2001).

## B. Misrepresentations

Drury argues that its alleged misrepresentations were merely oral statements that it would perform its obligations under the lease. A misrepresentation made during contract negotiations may form the basis of a DTPA claim if the defendant misrepresents a material fact about the goods or services sold to the plaintiff. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995); *Church & Dwight Co. v. Huey*, 961 S.W.2d 560, 567 (Tex. App.—San Antonio 1997, pet. denied). However, the mere failure to perform a contractual obligation cannot form the basis of a DTPA claim. *See Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996).

---

instruction and finding regarding its liability under the DTPA. Because the standard of review for each issue is the same legally sufficiency standard, we address both issues together. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

At trial, Ledeaux presented evidence that Drury told Ledeaux that it may install whatever sign it wanted to install on the leased premises. Two owners of Ledeaux testified that Drury stated that Ledeaux could install any type of sign that it wanted. Ledeaux's owners told Drury that they had envisioned a twelve-foot by sixteen-foot reader board that would display the restaurant's specials and events. They both testified that they felt that this particular sign was essential to the success of the restaurant. Evidence also showed that the City of San Antonio denied the permit application to install this sign because of a pre-existing dispute that Drury had with the City over the erection of another sign on the same property. The evidence also showed that Drury was aware of this dispute and that the dispute had lasted three years. As such, Drury misrepresented to Ledeaux that it would be able to erect the sign that it had wanted.

Drury argues that "[t]he misrepresentations merely stated what the contract stated and were nothing more than statements that the contractual obligations would be fulfilled." However, under the lease, Ledeaux had to obtain Drury's prior written approval to install a sign, and Drury, subject to permits, had the right to erect an LED sign anywhere on the leased premises. Because Drury's statement that Ledeaux would be able to put up any sign it wanted was more than just its promise to comply with the lease provision regarding the signage, Drury's oral representation was more than a mere promise to perform its obligations under the contract. *See id.* Thus, Drury's liability under the DTPA may be predicated on these statements. *See id.*; *Boys Clubs of Greater Dallas*, 907 S.W.2d at 478; *Church & Dwight Co.*, 961 S.W.2d at 567; *see also Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671–72 (Tex. 1990) (holding that evidence of a misrepresentation of a party's rights as a purchaser of a car dealership at the time of the contract supported the jury's finding of liability under the DTPA).

Although there was sufficient evidence to support Drury's liability under the DTPA, we must next turn to whether there was sufficient evidence to support the jury's damages award.

EXCESSIVE DAMAGES

Drury attacks the jury's award of $625,000 in damages for Drury's violation of the DTPA by arguing that the award was not based on legally sufficient evidence. Because Drury concedes that the record supports damages for some, but not all, of Ledeaux's damages, Drury's argument that the jury's award was excessive raises a factual sufficiency challenge to the evidence to support the jury's award. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998) ("The standard of review for an excessive damages complaint is factual sufficiency of the evidence.").

**A. Standard of Review**

"[T]he jury [generally has broad] discretion to award damages within the range of evidence presented at trial." *Gulf States Utils., Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). "The jury's findings may not be set aside merely because its reasoning in arriving at the amount of damages is unclear." *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.); *Potter v. GMP, L.L.C.*, 141 S.W.3d 698, 703 (Tex. App.—San Antonio 2004, pet. dism'd). When the trial evidence supports a range of damages, an award within that range is an appropriate exercise of the jury's discretion, and a reviewing court is not permitted to speculate on how the jury actually arrived at its award. *Id.* at 704; *see also Vela*, 203 S.W.3d at 49.

**B. Evidence of Ledeaux's Damages**

Drury acknowledges that there was evidence of some of Ledeaux's compensatory damages: a $95,000 note payable to Sterling Bank, a $50,000 line of credit with Sterling Bank,

and a $176,500 loan from American Equipment Finance. The total is $321,500. Ledeaux points to evidence that Ledeaux owed Sysco Foods $18,061.20, and that it had invested $35,000 in the sign for its restaurant. Drury and Ledeaux both agree that the evidence supports that Ledeaux's total investment in the restaurant was approximately $400,000. Yet the jury awarded $625,000 in compensatory damages.

Ledeaux argues that its owners' "sweat equity" explains the $225,000 difference. The evidence reflected that three owners had "worked fourteen to sixteen hours a day to finish out, then operate, the restaurant." Even assuming that sweat equity is a compensable damage, it would not be a damage that Ledeaux could be compensated for because it was Ledeaux's owners that made the time investment, not Ledeaux. *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990) ("A[n] [owner] cannot recover damages personally for a wrong done solely to the corporation, even though he may be injured by that wrong."). Although there was evidence that Ledeaux compensated the owners for their work, Ledeaux paid the owners from the money it borrowed and thus incurred no additional debt beyond what it had borrowed. Therefore, the jury's award of $625,000 in compensatory damages is not within the range of damages supported by the evidence.

## REMAND

Ledeaux filed a motion for rehearing requesting for the first time that the case be remanded for a re-election of remedies instead of a new trial. Drury responds that Ledeaux waived all of its other favorable jury findings by electing to recover under the DTPA.

### 1. *Election of Remedies*

"The judgment of the court should be 'so framed as to give the party *all the relief* to which he may be entitled.'" *Birchfield v. Texarkana Mem'l Hosp.*, 747 S.W.2d 361, 367 (Tex.

1987) (quoting TEX. R. CIV. P. 301)).  Although a party is generally entitled to pursue damages through alternative theories of recovery, "[a] party is not entitled to double recovery." *Waite Hill Servs., Inc. v. World Class Metal Works, Inc.*, 959 S.W.2d 182, 184 (Tex. 1998).  "A double recovery exists when a plaintiff obtains more than one recovery for the same injury." *Id.*  "When a party tries a case on alternative theories of recovery and a jury returns favorable findings on two or more theories, the party has a right to a judgment on the theory entitling him to the greatest or most favorable relief." *Boyce Iron Works, Inc. v. Sw. Bell Tel. Co.*, 747 S.W.2d 785, 787 (Tex. 1988).  "An election of remedies is the choosing of one or more inconsistent but coexistent modes of procedure and relief allowed by law on the same state of facts." *Weeks Marine, Inc. v. Salinas*, 225 S.W.3d 311, 322 (Tex. App.—San Antonio 2007, pet. dism'd). "The sole purpose of the doctrine of election of remedies is to prevent double recovery for a single wrong." *Id.*  A party prevailing on two or more theories need not formally waive all other alternative theories of recovery in electing a remedy, and where the prevailing party fails to elect a remedy, the trial court "should utilize the findings affording the greater recovery and render judgment accordingly." *Birchfield*, 747 S.W.2d at 367; *accord Boyce Iron Works*, 747 S.W.2d at 787.

### 2. Remand for Re-Election

The jury in the present case found in favor of Ledeaux on multiple alternative theories of recovery.  The record does not reflect that Ledeaux expressly waived any of its other theories of recovery, and Ledeaux did not do so merely by electing to recover under the DTPA. *See Boyce Iron Works*, 747 S.W.2d at 787.  The final judgment awarded damages to Ledeaux under the DTPA, and we reverse because of an excessive award of damages.  A remand for a re-election of remedies would enable Ledeaux to exercise its right to a judgment on the theory entitling it to the

greatest relief, but would not enable Ledeaux to obtain double recovery, which is the only purpose for an election of remedies. *See Weeks Marine*, 225 S.W.3d at 322; *Green Oaks, Ltd. v. Cannan*, 749 S.W.2d 128, 131 (Tex. App.—San Antonio 1987) *writ denied*, 758 S.W.2d 753 (Tex. 1988) (per curiam).

Accordingly, we grant Ledeaux's request and modify our judgment to remand for further proceedings consistent with this opinion. We deny Ledeaux's other requested relief.

CONCLUSION

Because the evidence is factually insufficient to support the jury's award of damages, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.[3]

Rebecca Simmons, Justice

---

[3] Because we reverse and remand the case, we need not consider Drury's remaining issues.